## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Janya Sawyer, *et al.* | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-16-118 |
| | : | |
| | : | |
| Union Carbide Corporation, *et al.* | : | |
| | : | |

## MEMORANDUM

The estate of Joseph Morris, his surviving spouse, and his surviving children sued Foster

Wheeler, LLC ("Foster Wheeler") in the Circuit Court for Baltimore City. Morris died from

mesothelioma, and the plaintiffs claim under various state law theories that the defendants were

responsible for exposing him to the asbestos that caused his disease. Foster Wheeler removed

Morris's action to this court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

Now pending is the plaintiffs' motion to remand the case to state court. The issues have been

fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2014). For the reasons

stated below, the court will grant the plaintiffs' motion to remand.

## BACKGROUND

The plaintiffs claim that Morris was diagnosed with asbestos-related mesothelioma on

December 1, 2014 and died as a result of this disease on March 1, 2015. (Compl. 12-13, ECF No.

2.)  Allegedly he was exposed to asbestos at Bethlehem Steel Sparrows Point Shipyard (the

"shipyard"), where he worked as a "riveter heater and boiler maker in the 'boiler shop'" from

1948 through the 1970s. (Compl. 12; Pls.' Mot. Remand 3, ECF No. 138-1.) The plaintiffs filed

their complaint in the Circuit Court for Baltimore City on June 5, 2015, alleging theories of strict

liability, breach of warranty, negligence, fraud, conspiracy, market share liability, loss of consortium, and wrongful death. (Compl. 10.) Foster Wheeler filed its notice of removal on January 11, 2016.

Foster Wheeler claims it "manufactured marine boilers and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy." (Notice of Removal ¶ 6, ECF No. 1.) The defendant's basis for removal is that Foster Wheeler was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1) in the manufacture and sale of boilers for the Navy.

In their motion for remand, the plaintiffs argue that (1) Foster Wheeler's notice of removal was not timely and (2) Foster Wheeler fails to meet the requirements of the federal officer removal statute. As to the second point, the plaintiffs claim that the boilers were constructed in the shipyard's boiler shop under the direction of Foster Wheeler personnel and were only transported and installed on Navy ships after their completion. They do not dispute that the boilers were built pursuant to Navy specifications, and that the Navy controlled the warnings that accompanied the boilers when they were placed on Navy ships, but they contend the Navy did not restrict Foster Wheeler's ability to warn its employees in the shipyard's boiler shop about the presence of asbestos and their need to take proper safety precautions while constructing the boilers. Additionally, the plaintiffs say there is no evidence that warning individuals in the shipyard's boiler shop would have conflicted with the Navy's specifications, and none of the Navy guidelines cited by Foster Wheeler relate to warning workers in the boiler shop.

**ANALYSIS**

2

Under 28 U.S.C. § 1442(a)(1), a civil defendant may remove a case to federal court where the removing defendant (1) is a federal officer or person who "acted under" the direction of a federal officer, (2) raises a colorable federal defense, and (3) demonstrates a causal nexus between the plaintiff's claims and the conduct performed under color of federal law. *See, e.g.*, *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D.Pa.2010). Such a defendant may remove the case without the consent of its codefendants. *See Citrano v. John Crane–Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 (D. Md. 2014). The defendant bears the burden of proving that removal is proper. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). However, a defendant does not need to prove that its federal immunity defense will succeed to obtain removal. *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994). The Supreme Court has cautioned against a "narrow, grudging" interpretation of the federal officer removal statute, explaining that, "the validity of the defense of official immunity [should be] tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see also Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*, 872 F.2d 571, 576 (4th Cir.1989) ("[T]he right of removal conferred by § 1442(a)(1) is to be broadly construed.").

1.    Timeliness of Removal

To remove a case, the defendant must file a notice of removal in the district court within 30 days after receiving the initial pleading. 28 U.S.C. § 1446(b)(1). Where, as here, the complaint does not provide details of the plaintiffs' claims, the defendant may remove within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). The "other paper" requirement "is broad enough to include any information received by the defendant,

whether communicated in a formal or informal manner." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (internal quotation marks omitted).

Foster Wheeler argues that its January 11, 2016 notice of removal was timely because it was filed within 30 days of David Williams's deposition on December 11, 2015. (Notice of Removal ¶¶ 2-3.) In his deposition, Williams said he worked in the boiler shop of the shipyard, and Morris was "[t]he helper most of the time" when Williams worked there. (Williams Dep. 11, 13, Notice of Removal Ex. B, ECF No. 1-1.) Foster Wheeler claims it was first ascertainable that the case was removable when Williams responded to the question, "Do you know the names of any of the ships that you were building boilers for?" (Williams Dep. 68.)  Williams testified, "No. When I went there, I knew Vietnam War and we were building Navy ships for that, but as far as the names and things like that, no." (*Id.*).

The plaintiffs claim that Foster Wheeler was aware of the information contained in Williams' testimony no later than November 30, 2015, when the plaintiffs filed interrogatories and document requests directed to Foster Wheeler, which provided Foster Wheeler with a list of ships constructed at the shipyard from 1948 through 1979. (Interrog. No. 11, Mot. Remand Ex. 9, ECF No. 138-12.) Some of those ships were designated as "USS," or "United States Ship," in the interrogatory, and the plaintiffs asked Foster Wheeler to provide all documents and information relating to the construction of boilers for use on these ships. (*Id.*) The plaintiffs had previously provided an answer to an interrogatory indicating that Morris was exposed to asbestos from Foster Wheeler boilers in his work as a boilermaker at the shipyard from 1948 through the 1970s. (Pls.' Suppl. Answers to Interrogs. 4, Mot. Remand Ex. 8, ECF No. 138-11.) Together, these two pieces of information alerted Foster Wheeler that some Navy ships were built at the

shipyard during the time period that Morris was allegedly exposed to asbestos while constructing Foster Wheeler boilers there.

Whether the information provided by the plaintiffs prior to Williams's deposition rendered removability "ascertainable" is a close question which does not need to be resolved. Assuming without deciding that removal was timely, the case nonetheless must be remanded for the reasons explained below.

2.   Colorable Federal Defense

Foster Wheeler premised its removal on the federal contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). To invoke that defense against a failure-to-warn product liability claim, a defendant must show "(1) the government exercised its discretion and approved certain warnings for the products; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government." *Citrano*, 1 F. Supp. 3d at 467.

Foster Wheeler has submitted affidavits from J. Thomas Schroppe and Admiral Ben J. Lehman to support its argument that the Navy provided Foster Wheeler with precise specifications that governed all aspects of the design, manufacture, and delivery of the boilers, including all warnings related to the boilers. Schroppe is a former employee of Foster Wheeler who began his career at the corporation as a proposal engineer in the marine department and eventually became the president. (Schroppe Aff. ¶ 1, Def.'s Opp'n Ex. 4, ECF No. 139-5.) He avers that he is "personally familiar with the degree of supervision and control exercised by the Navy and its agencies in procurement contracts with Foster Wheeler for boilers and auxiliary equipment" because he was "personally involved in such contracts." (*Id.* ¶ 2.) According to

Schroppe, the Navy required Foster Wheeler to comply with ship and military specifications, which covered all components of the boilers built for Navy use. (*Id.* ¶¶ 5, 6.) Schroppe represents that Foster Wheeler was obligated to provide technical manuals for the naval boilers. (*Id.* ¶ 21.) He says "[t]he Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers" and "participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents." (*Id.*) The technical manuals contained "safety information related to the operation of naval boilers . . . only to the extent directed by the Navy." (*Id.*) Schroppe avers that "the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy," and the Navy would not permit Foster Wheeler to "affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy." (*Id.* ¶ 22.)

Lehman is a retired Rear Admiral of the Navy. (Lehman Aff. ¶ 1, Def.'s Opp'n Ex. 5, ECF No. 139-6.) According to Lehman, boilers installed on Navy ships "were designed and manufactured in accordance with detailed specifications." (*Id.* ¶ 3.) He attests that "the military specifications for boilers and other equipment intended for use on vessels of the U.S. Navy . . . were drafted, approved, and maintained by the U.S. Navy . . . to encompass all aspects of shipboard equipment, including the material requirements" and "the nature of any communication affixed to boilers or other equipment supplied to the U.S. Navy." (*Id.* ¶¶ 6, 8.) He further states that "[m]ilitary specifications governed every significant characteristic of the equipment used on U.S. Navy ships, including the instructions and warnings." (*Id.* ¶ 10.) "This control included the decision of which warnings should or should not be included." (*Id.*)

According to Lehman, the Navy "would not, and could not, permit any equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment" or accompanying instructions or manuals. (*Id*.) The Navy "was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied or related to any piece of equipment" and "dictated every aspect of . . . written warnings associated with its ships and did not permit deviation from any of its contractors." (*Id*. ¶ 11.) Lehman explains that Navy specifications for manuals "specifically limited warning information to items and events dealing with the operation of equipment." (*Id*. ¶ 12.) He avers that the Navy would not have allowed Foster Wheeler to "to affix any warning related to any asbestos hazards on their equipment," including boilers, or "to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy." (*Id*. ¶ 14.)

      Schroppe's and Lehman's affidavits demonstrate that the Navy provided Foster Wheeler with detailed specifications governing warnings and written information that accompanied Foster Wheeler boilers when they were delivered to the Navy and placed on Navy ships, but the defendant does not assert or offer any evidence to show that the Navy exercised any discretion over Foster Wheeler's ability to warn its workers in the shipyard's boiler shop. Furthermore, Foster Wheeler does not claim that it proposed any type of warning to the Navy concerning asbestos exposure in the shipyard's boiler shop, much less that the Navy considered and rejected such a warning. The government does not need to dictate or prohibit warnings to satisfy *Boyle*, but "the government's approval must . . . go beyond merely 'rubber stamping' the contractor's choice." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1004 (7th Cir. 1996). The government

exercises sufficient discretion whenever "a contractor proposes warnings that the government substantively approves, . . . even if the government did not 'prohibit' the contractor from proposing more alarming warnings." *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). However, the government contractor defense "does not shield defendants where the government might have exercised its discretion and final authority but did not." *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 144 (D. Mass. 2009). The Navy could not have been exercising its discretion where, as here, there is no evidence that it considered warnings during Foster Wheeler's manufacturing process. Because Foster Wheeler did not suggest warnings to the government, it is impossible that warnings in the shipyard's boiler shop were "considered by a Government officer, and not merely by the contractor itself." *Boyle*, 487 U.S. at 512. Therefore, Foster Wheeler has not established a colorable federal defense.

3.   Causal Nexus

For similar reasons, there is no causal nexus between the plaintiffs' claims and the conduct performed under color of federal law. To establish a causal connection, the defendant "must show that the acts that form the basis for the state civil suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Citrano*, 1 F. Supp. 3d at 469 (internal quotation marks omitted). Although Foster Wheeler has presented evidence that the Navy required its boilers to conform to government specifications when they were delivered to the Navy, there is no evidence that the government exercised oversight over safety procedures in the boiler shop. *See Savoie v. Huntington Ingalls, Inc.*, __ F.3d __, No. 15-30514, 2016 WL 1138841, at *4 (5th Cir. Mar. 22, 2016) (finding no causal nexus where "the Navy neither imposed any special safety requirements on the shipyard nor prevented the shipyard from

imposing its own safety procedures"); *see also Bartel v. Alcoa S.S. Co*., 805 F.3d 169, 174 (5th Cir. 2015) (holding that the plaintiffs' failure-to-warn allegation concerning asbestos did not challenge actions taken under color of federal authority even though the government was responsible for the existence of the asbestos because there was "no evidence showing that the government actually exercised continuing oversight over operations"). Because no federal officer provided any direction regarding whether to warn Foster Wheeler's workers in the shipyard's boiler shop about asbestos, Foster Wheeler has not established the necessary causal nexus between their actions and the plaintiffs' claims. Accordingly, Foster Wheeler has not alleged facts sufficient to satisfy the requirements of 28 U.S.C. § 1442(a)(1).[1] This court lacks jurisdiction and will grant the plaintiffs' motion to remand.

## CONCLUSION

For the reasons stated above, the court will grant the plaintiffs' motion to remand.

A separate order follows.

April 20, 2016                                          /S/
Date                                          Catherine C. Blake
                                          United States District Judge

---

[1] Because Foster Wheeler has failed to establish both a colorable federal defense and a causal nexus, the court does not need to address the "acting under" requirement to find that Foster Wheeler is not entitled to federal officer removal.